1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

TODD M. HONEYCUTT,                    )
                                      )
            Petitioner,               )        2:06-cv-0634-RLH-RJJ
                                      )
vs.                                   )
                                      )        ORDER
BILL DONAT, *et al.*,                 )
                                      )
            Respondents.              )
_____/

This action proceeds on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, by petitioner Todd Honeycutt, a Nevada prisoner.  The action comes before the court with respect to its merits.  The court will deny the petition

**I.      Procedural History**

Petitioner was originally charged by way of information with first degree kidnapping and two counts of sexual assault.  Exhibit 1.[1]  A trial was held in the District Court for Clark County between October 22, 1998 and November 3, 1998, and the jury was unable to reach a verdict. Exhibits 6-12.  Before the new trial, the prosecutor filed a motion requesting the petitioner's

_____

[1]  The exhibits cited in this order in the form "Exhibit ___," are those filed by respondents in support of their motion to dismiss the petition for writ of habeas corpus, and are located in the record at docket #18-24.

telephone services be revoked as petitioner was purportedly making harassing phone calls to a witness.  Exhibit 11.  The court granted this motion.  Exhibit 12.  The state sought reconsideration, arguing that petitioner should be placed in complete isolation as he was soliciting the murder of the alleged victim in the case.  Exhibit 13.  The court granted the motion.  Exhibit 14.

On February 24, 1999, a grand jury returned an indictment charging the petitioner with solicitation to commit murder.  Exhibit 16.  The state moved to join the solicitation to commit murder case with the sexual assault and kidnapping case.  Exhibit 17.  The trial court granted the motion.  Exhibit 24.  A trial was held on all of the charges between September 21, 1999, and October 5, 1999.  Exhibits 33-44.  Petitioner was convicted as charged, and sentenced to life in prison with parole eligibility in five years for the kidnapping count, to life in prison with parole eligibility in ten years for the sexual assault counts, and to one hundred eighty months in prison with parole eligibility in seventy-two months for the solicitation of murder charge.  Exhibits 44-46.  Counts II and III were to run consecutively to each other, and the solicitation of murder was to run consecutively to all the other charges.  Exhibit 46.  A judgment of conviction was entered on December 8, 1999.  Exhibit 46.

Petitioner appealed his convictions, arguing (1) the trial court abused its discretion in joining and then declining to sever the two cases; (2) several instances of prosecutorial misconduct deprived the petitioner of his right to a fair trial and impartial jury; (3) claims of outrageous state conduct, relating to solicitation of murder charge; (4) the trial court's bias and erroneous rulings deprived petitioner of his right to a fair trial when it forced the petitioner to testify to the solicitation to commit murder charge by improperly threatening to strike the testimony of another witness, by applying different rules for the state and defense, by improperly admitting a security office video tape and the testimony of witness Bard, and by improperly admitting a jury instruction; and (5) a claim of cumulative error.  Exhibit 49.  The Nevada Supreme Court affirmed judgment of conviction.  Exhibit 52.[2]  Remittitur issued on December 3, 2002.  Exhibit 53.

Petitioner then filed a state habeas corpus petition, alleging thirteen grounds for relief.

---

[2] *Honeycutt v. State*, 56 P.3d 362 (Nev. 2002).

2

Exhibits 54 and 55.  The state district court denied the petition.  Exhibit 65.  Petitioner appealed, and the Nevada Supreme Court remanded the case so that the district court could enter specific findings of fact and conclusions of law.  Exhibits 66, 67 and 70.  The state district court entered an order with findings and conclusions of law as was required.  Exhibit 71.  The Nevada Supreme Court then affirmed the lower court's denial of petitioner's claim.  Exhibit 72.  Remittitur issued on May 22, 2006.  Exhibit 73.

The instant federal habeas corpus action was initiated on May 18, 2006 (docket #1).  Respondents moved to dismiss the petition (docket #16).  This court granted the motion to dismiss, finding grounds three, five, seven, and eight were procedurally defaulted (docket #32).  Respondents have answered the remaining claims in the habeas corpus petition (docket #36), petitioner has filed a reply (docket #37), and respondents have filed a response (docket #38).

**II.  Petitioner's Motion to Dismiss**

Petitioner filed a reply to respondents' answer (docket #37).  Respondents filed an opposition to the reply, stating petitioner filed a "First Amendment Petition" and is improperly attempting to amend his petition to include new claims through his reply when he has not complied with Federal Rule of Civil Procedure 15(a) (docket #39).  Petitioner has filed a motion to dismiss the First Amendment Petition without prejudice (docket #42).  The court is unaware of any first amendment petition that was file in the instant case.  However, to the extent that petitioner's reply attempts to amend his original petition and add new claims, the court will grant the motion, and dismiss any such claims without prejudice.

**III.  Federal Habeas Corpus Standards**

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim --
>
> (1)    resulted in a decision that was contrary to, or involved an

3

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693 (2002).   A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "'if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases'" or "'if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent.'" *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694).

A state court decision is an unreasonable application of clearly established Supreme Court precedent "'if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Lockyer*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413).   The unreasonable application clause "requires the state court decision to be more than incorrect or erroneous"; the state court's application of clearly established law must be objectively unreasonable. *Id.* (*quoting Williams*, 529 U.S. at 409).   *See also Ramirez v. Castro*, 365 F.3d 755 (9th Cir. 2004).

In determining whether a state court decision is contrary to, or an unreasonable application of, federal law, this Court looks to a state court's last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Plumlee v. Masto*, 512 F.3d 1204, 1209-10 (9th Cir. 2008) (en banc).   Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of

4

correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

**IV.  Discussion**

    **A.  Ground One**

        In his first ground for relief petitioner alleges he was denied the effective assistance of trial counsel in violation of his Sixth and Fourteenth Amendment rights.  Petitioner argues thirteen specific subclaims of relief: (a) trial counsel was ineffective for failing to investigate, secure, or call expert witnesses; (b) trial counsel was ineffective for failing to correct the trial judge when the trial judge improperly stated what the evidence was; (c) trial counsel was ineffective for failing to request that the jury view petitioner's van as it was the location of the allegations; (d) trial counsel was ineffective for failing to prepare and present evidence for a pretrial joinder motion; (e) trial counsel was ineffective for failing to include the entire correct jury instruction for mistaken belief in consent; (f) trial counsel was ineffective for failing to investigate information and evidence available to support defense witnesses and theories that would also contradict state witness Bates; (g) trial counsel was ineffective for abandoning petitioner's interests when he expressed contempt for him at trial; (h) trial counsel was ineffective for failing to move for dismissal of the solicitation charge on the basis that the trial court did not have jurisdiction to proceed against him; (i) trial counsel was ineffective for failing to request acquittal based on the insufficiency of the evidence; (j) trial counsel was ineffective for failing to investigate, interview, or call witnesses; (k) trial counsel was ineffective for failing to object to certain requests and instances at trial; (l) trial counsel was ineffective for failing to adequately cross-examine, prepare and present inconsistent statements, and for failing to impeach witnesses with prior inconsistent statements; and (m) trial counsel was ineffective for failing to present to the jury exculpatory evidence that petitioner only wanted to scare witness/victim Bates and not have her murdered.

        In order to prove ineffective assistance of counsel, petitioner must show (1) counsel acted deficiently, in that his attorney made errors so serious that his actions were outside the scope of professionally competent assistance and (2) the deficient performance prejudiced the outcome of the

1  proceeding. *Strickland v. Washington*, 466 U.S. 668, 687-90 (1984).

2  Ineffective assistance of counsel under *Strickland* requires a showing of deficient

3  performance of counsel resulting in prejudice, "with performance being measured against an

4  'objective standard of reasonableness,' . . . 'under prevailing professional norms.'" *Rompilla v.*

5  *Beard,* 545 U.S. 374, 380 (2005) (quotations omitted).  If the state court has already rejected an

6  ineffective assistance claim, a federal habeas court may only grant relief if that decision was contrary

7  to, or an unreasonable application of the *Strickland* standard.  *See Yarborough v. Gentry,* 540 U.S. 1,

8  5 (2003).  There is a strong presumption that counsel's conduct falls within the wide range of

9  reasonable professional assistance.  *Id.*

10  **1. Counsel's Failure to Investigate, Secure, or Call Expert Witnesses**

11  In ground one(a) petitioner contends that trial counsel was ineffective for failing to

12  investigate, secure, or call a handwriting expert, a latent print examiner, a urologist, and a dental

13  expert at trial.  Petitioner argues that a handwriting expert would have testified that he was not the

14  author or did not write the state's exhibit 45, a piece of paper containing the victim's personal

15  information.  Moreover, petitioner states that a latent print examiner could have determined whether

16  petitioner had ever come into contact with the piece of paper.

17  Petitioner then asserts that a urologist would have testified about the improbability of

18  the victim's testimony that during the sexual assault she bit the petitioner's penis two or three times.

19  Furthermore, petitioner alleges that a dental expert would have cast serious doubt upon the victim's

20  testimony that she bit the petitioner, as a dental expert would have testified about the likelihood of

21  serious injury that would have resulted had the victim bitten the petitioner.

22  Petitioner raised the instant claim in the state court, and the Nevada Supreme Court

23  affirmed the lower court's denial, stating:

24  First, appellant claimed that his trial counsel was ineffective for
   failing to investigate or call expert witnesses.  Appellant asserted that his
25  counsel should have had a handwriting expert, a latent print expert, a
   urologist, and a dental expert handy to testify on his behalf.  Appellant
26  argued that these experts would have provided testimony that contradicted
   the testimony of several of the State's witnesses.

Appellant failed to demonstrate that the testimony of a handwriting expert and latent print expert regarding Exhibit 45 would have altered the outcome of his trial. Appellant alleged that their testimony would have proven he did not write or handle Exhibit 45. Appellant testified to this effect at trial. Additionally, the State argued to the jury that the source of the information on Exhibit 45 was what was important, not the source of the handwriting. Appellant also failed to demonstrate that the testimony of a urologist and dental expert would have altered the outcome of his trial. Appellant alleged that their testimony would have contradicted the victim's testimony. The victim testified that she bit appellant's penis two or three times during the assault. However, another witness testified that the victim's sexual assault report stated that she did not bite her assailant. Additionally, an officer testified that he saw appellant's penis within hours of the assault, when a serology kit was prepared for appellant, and he did not see any bite marks on appellant's penis. Accordingly, we conclude the district court did not err in denying this claim.

Exhibit 72.

Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. Counsel's failure to investigate or call a handwriting expert or latent print examiner did not prejudice the outcome of the trial. Regardless of whether the petitioner wrote exhibit 45, which contained the victim's personal information, there was evidence introduced at trial that the petitioner wanted to pay someone to kill victim Bates. Moreover, there was testimony that stated petitioner gave the victim's information to several people so that they could find her and prevent her from testifying at the trial.

Detective Hanna testified at trial that in the course of investigating the petitioner while he was housed at Clark County Detention Center (CCDC), he had a search warranted executed so that petitioner's mail could be search. Exhibit 39, T 115. In letters that were signed using petitioner's name and cell number, there was information relating to the solicitation of murder charge. *Id.* Detective Preusch, undercover at the time, talked with petitioner about being hired to murder the victim. Exhibit 40, T 38.

David Paule, a CCDC inmate who was originally housed in the cell block as the petitioner, testified that the petitioner told him that he wanted his ex-girlfriend "taken out." *Id.* at T 5-6. Petitioner stated that she was accusing him of sexually assaulting him, that she was lying and

7

1   that he wanted her killed. *Id.* at T 6. Petitioner told Paule that he would pay $3000 to someone if

2   they would kill this woman. *Id.* at T 10. Paule also identified a letter given to him with the contact

3   information of the victim and her friend. *Id.* at T 11-12; Exhibit 40, T 43. Petitioner testified at trial

4   that he did not write exhibit 45, and the paper the informant and the police saw was not from him.

5   Exhibit 42, T 21-23, 40. Petitioner stated that he only wanted to scare victim Bates and he did not

6   want to kill her. *Id.* at T 42.

7           The Nevada Supreme Court's determination did not involve an unreasonable

8   application of *Strickland*, as there is no indication that counsel's failure to call the expert witnesses

9   regarding the letter prejudiced the outcome of the trial.

10          Moreover, the Nevada Supreme Court's ruling was not contrary to *Strickland* when it

11  determined that the claim that counsel failed to call a urologist or dental expert at trial was without

12  merit. Petitioner has not shown that counsel's failure to call a urologist or dental expert to refute the

13  victim's statement that she bit his penis prejudiced the outcome of the trial.

14          At trial the victim Bates testified that she performed oral sex upon the petitioner

15  against her will. Exhibit 39, T 25. She stated that she bit his penis at that time. *Id.* The sexual

16  assault nurse examiner testified on cross-examination that the victim did not state that she had bit the

17  petitioner's penis. *Id.* at T 78. Michael Barnbeck, the police officer who gathered the material used

18  for the serology kit, testified that he did not see any bite marks on petitioner's penis. *Id.* at T 98.

19  Petitioner also testified that Bates never bit him. Exhibit 41, T 43. Therefore, testimony was

20  presented by several witnesses that victim Bates did not bite the petitioner, nor did they see evidence

21  of bite marks on petitioner. Petitioner has not demonstrated that counsel's failure to call expert

22  witnesses prejudiced the outcome in this case.

23          The court will deny ground one(a).

24          **2. Counsel's Failure to Correct the Trial Court's Improper Statement of**

25          **Evidence**

26          In ground one(b) petitioner alleges that trial counsel was ineffective for failing to

8

1  correct the trial judge when the judge improperly commented on the evidence.  During closing

2  arguments counsel discussed testimony of Linda Ebbert, the sexual assault nurse who examined

3  victim Bates.  Exhibit 43, T 61-62.  Counsel stated:

> Now what did she [Linda Ebbert] testify?  Yes, there's anal tears.  We know that.  And we'll talk about Dr. Eftaiha's testimony in a bit.  But yes, there's anal tears, but the one thing that was interesting, she used this omnilight.  Now this omnilight is to detect bruising. And once again, ladies and gentlemen of the jury, with the confines of this van and with the struggle and with the relative size of Todd Honeycutt and Ms. Bates and everything they went through here, you would have to find some bruising.  I mean, you remember the choking demonstration by Mr. Kephart?  Well, if that kept up, do you think there would be bruising?  And then she also testified there was a hand –
>
> THE COURT: Mr. Yampolsky, you have mischaracterized the testimony as to what the light was used for.  Please keep it within the bounds.
>
> MR. YAMPOLSKY: The omnilight is to detect bruising.
>
> THE COURT: Mr. Yampolsky, please state it correctly for the jury.
>
> MR. YAMPOLSKY: Isn't that?
>
> THE COURT: What it was used for by that nurse.
>
> MR. YAMPOLSKY: It was used for by that nurse to look around her neck.
>
> THE COURT: It was for examination of the pelvic area.
>
> MR. YAMPOLSKY: But she - maybe I misspoke.  Excuse me.  But she also testified that she didn't see any bruises, and she is an expert in sexual assault.

19  *Id.* at T 61-62.

20          The Nevada Supreme Court affirmed the state district court's denial of this claim,

21  stating the following:

> Second, appellant claimed that his trial counsel was ineffective for failing to correct the judge when the judge misstated the evidence.  Appellant failed to demonstrate that his counsel was deficient in this regard.  The record reveals that the judge did not misstate the evidence as alleged by appellant.  Accordingly, we conclude the district court did not err in denying this claim.

25  Exhibit 72.

26          Petitioner has not demonstrated that the Nevada Supreme Court's determination was

objectively unreasonable.  Linda Ebbert testified that in her practice they utilize an omnilight, which is used for detecting bruising, and to see if there are secretions on the skin, such as saliva, urine, semen, fibers of clothing, or hair.  Exhibit 39, T 64.  Ebbert stated on cross-examination that the omnilight was used to detect whether there were bruises on the victim, and none were found.  *Id.* at T 77-78.  Although counsel was correct in stating that the omnilight was used by witness Ebbert to detect bruising, and the trial judge improperly corrected him, the jury heard Ebbert's testimony as to why the omnilight was used.  Moreover, the important information for the jury to hear was not why the omnilight was used, but the fact that Ebbert did not find any bruising on victim Bates, despite the victim's claim that petitioner had his knee to her throat, and that he choked her.  Petitioner has not shown that counsel's failure to correct the trial judge during closing arguments prejudiced the outcome of the trial.

The court will deny ground one(b).

### 3. Counsel's Failure to Request a Jury View of Petitioner's Vehicle

In ground one(c) petitioner contends that trial counsel was ineffective for failing to request that the jury be allowed to view petitioner's van, as it was the location of the alleged sexual assault.  Petitioner contends that given the layout of the van, had the jury been shown the actual minivan, the jury would have concluded that the assault could not have taken place as the victim claimed.

On appeal, the Nevada Supreme Court affirmed the lower court's denial of this claim, finding it to be without merit.  The court stated:

> Third, appellant claimed that his trial counsel was ineffective for failing to request that the jury see the actual minivan where the alleged assault took place.  Appellant alleged that had the jury seen the actual minivan, the jury would have determined that the assault, as testified to by appellant, was physically impossible.  Appellant failed to demonstrate that his counsel was deficient in this regard or that he was prejudiced.  Photographs of the interior of the minivan and pertinent measurements were admitted into evidence and presented to the jury for consideration.  Additionally, appellant's counsel did a demonstration to approximate scale for the jury and argued that the assault could not have physically occurred as testified to by appellant.  Accordingly, we conclude the district court did not err in denying this claim.

10

1   Exhibit 72.  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's

2   ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as

3   determined by the United States Supreme Court.  There is no indication that trial counsel was

4   ineffective for failing to request that the jury be allowed to view the minivan, nor has petitioner

5   shown that counsel's alleged failure prejudiced the outcome of the trial.

6            At trial, Maria Thomas, a crime scene analyst for the Las Vegas Metropolitan Police

7   Department, testified that she photographed the vehicle where the sexual assault took place.  Exhibit

8   38, T 8.  Thomas identified the photographs she took of the vehicle, which included pictures of the

9   inside and the outside of the van.  *Id.* at T 8-9.  The jury viewed the photographs of the inside of the

10  minivan.  *Id.*  The defense called James Thomas, a private investigator, to testify.  Exhibit 40, T 63.

11  Thomas also took pictures of the minivan.  *Id.*  Moreover, Thomas took pictures of the

12  measurements inside of the vehicle, such as the distance between the two front seats and the distance

13  from the top of the rear seat to the roof.  *Id.* at T 65-68.  The state district court also allowed defense

14  counsel to set up seats approximating the setup of the seats in the minivan.  Exhibit 42, T 37.

15  Defense counsel went through petitioner's version of the events using the setup of chairs, and had

16  petitioner move about the setup to show the events and how he and the victim were positioned  the

17  night of the incident.  *Id.* at T 42-48.

18           The jury viewed photographs of the van, heard the measurements of all the pertinent

19  distances from inside the vehicle, and even saw an approximation of how the events unfolded inside

20  the vehicle during the trial.  There is no indication that had the jury been allowed to see the actual

21  inside of the van that the result of the trial would have been different.

22           The court will deny ground one(c).

23       **4. Counsel's Failure to Prepare and Present Evidence for Pretrial Joinder**

24       **Motion**

25           In ground one(d) petitioner argues that trial counsel was ineffective for failing to

26  prepare and present evidence for the hearing on the pretrial motion for joinder.  Petitioner contends

1   that the joinder of the solicitation charge with the other charges violated his Fifth Amendment right

2   to remain silent, because he had to choose to either testify to both charges or remain silent as to both.

3          Prior to trial the state filed a motion for joinder, arguing that the solicitation for

4   murder charge should be joined with the kidnapping and sexual assault charges for the purpose of

5   trial.  Exhibit 17.  Defense counsel opposed the motion, arguing joinder of the offenses would violate

6   petitioner's fourth, fifth, sixth, and fourteenth amendment rights.  Exhibit 18.  The trial court held a

7   hearing on the motion on March 29, 1999.  Exhibit 24.  After hearing argument from counsel, the

8   state district court determined that joinder was proper.  *Id.*

9          On appeal from his convictions petitioner alleged that the trial court erred in joining

10  the offenses.  Exhibit 49.  The Nevada Supreme Court found that the district court did not err in

11  joining the offenses or failing to sever the counts during trial.  Exhibit 52.  The court discussed the

12  claim in depth, and found the claim to be without merit.  Exhibit 52.          Petitioner raised

13  the ground that counsel failed to prepare and present evidence for the hearing on the pretrial motion

14  for joinder in his state habeas corpus petition.  Exhibits 54 and 55.  The Nevada Supreme Court then

15  affirmed the state district court's denial of the instant claim, stating:

16              Fourth, appellant claimed that his trial counsel was ineffective for
                failing to adequately oppose the joining of his solicitation charge to the
17              other charges.  Appellant failed to demonstrate that his counsel was
                deficient.  On direct appeal, this court held that the district court did not err
18              in joining appellant's charges or denying appellant's motion to sever the
                charges.  [fn 6: *Honeycutt*, 118 Nev. At 667-69, 56 P.3d at 367-68.]
19              Appellant failed to identify what additional argument his counsel should
                have made, and failed to demonstrate that any additional argument would
20              have altered the district court's decision.  Accordingly, we conclude the
                district court did not err in denying this claim.
21  Exhibit 72.

22          The Nevada Supreme Court's determination that the instant claim was without merit

23  was not an objectively unreasonable application of *Strickland*.  Petitioner has not shown what more

24  counsel should have argued or what evidence counsel should have presented so that the trial court

25  would have denied the motion for joinder.  In fact, counsel did argue at the hearing on the motion for

26  joinder, and at trial, that the solicitation to commit murder charge should not be joined.  The Nevada

12

1   Supreme Court found that the state district court did not abuse its discretion in joining the charges.

2   Petitioner has failed to show that counsel acted in a deficient manner, or that if counsel did act

3   ineffectively, that counsel's failure prejudiced the outcome of trial.

4          The court will deny ground one(d).

5   **5. Counsel's Failure to Include the Entire Correct Jury Instruction for**

6   **Mistaken Belief in the Consent**

7          In ground one(e) petitioner alleges that trial counsel was ineffective for failing to

8   include the entire correct jury instruction for mistaken belief of consent.  At trial, defense counsel

9   proffered the following jury instruction:

10         In the crime of sexual assault, general criminal intent would exist
    at the time of the commission of sexual assault.  There is no general
11  criminal intent if the defendant had a reasonable and good-faith belief that
    Karen Bates voluntarily consented to engage in fellation and anal
12  intercourse.  Therefore, a reasonable and good-faith belief that there was
    voluntary consent is a defense to such charge.

13

14         If after a consideration of all the evidence you have a reasonable
    doubt that the defendant had general criminal intent at the time of the act
15  of fellatio and anal intercourse, you must find him not guilty of such crime.

16  Exhibit 43, T 4-5.  The trial court did not give this jury instruction.  Petitioner raised the failure to

17  give this instruction on direct appeal.  On appeal, the Nevada Supreme Court stated:

18         At trial, Honeycutt proposed a jury instruction which stated, in
    essence, that a reasonable and good faith belief that there was voluntary
19  consent is a defense to a charge of sexual assault.  A criminal defendant is
    entitled to jury instructions on the theory of his case. [fn 20: *Barron v.*
20  *State*, 105 Nev. 767, 773, 783 P.2d 444, 448 (1989).] If the defense theory
    is supported by at least some evidence which, if reasonably believed, would
21  support an alternate jury verdict, the failure to instruct on that theory
    constitutes reversible error. [fn 21: *Rugland v. State*, 102 Nev. 529, 531,
22  728 P.2d 818, 819 (1986)]

23         This court has previously indicated that Nevada law supports a
    defense of reasonable mistaken belief of consent in sexual assault cases. [fn
24  22: *See Owens v. State*, 96 Nev. 880, 884 n.4, 620 P.2d 1236, 1239 n.4
    (1980); *see also Hardaway v. State*, 112 Nev. 1208, 1210-11, 926 P.2d 288,
25  289-90 (1996). ] We conclude that based on the wording of NRS 200.366
    and our prior case law defining the proof required for sexual assault,
26  Nevada does recognize this defense.  NRS 200.366 defines sexual assault
    as the penetration of another "against the will of the victim or under
    conditions in which the perpetrator knows or should know that the victim

is mentally or physically incapable of resisting." In *McNair v. State*, we concluded that the legal inquiry into the issue of lack of consent consists of two questions: (1) whether the circumstances surrounding the incident indicate that the victim reasonably demonstrated lack of consent; and (2) whether, from the perpetrator's point of view, it was reasonable to conclude that the victim had consented. [fn 23: 108 Nev. 53, 56-57, 825 P.2d 571, 574 (1992).] Thus, because a perpetrator's knowledge of lack of consent is an element of sexual assault, we conclude that a proposed instruction on reasonable mistaken belief of consent must be given when requested as long as some evidence supports its consideration. [fn 24: This is in contrast to our decision in *Jenkins v. State* that mistaken belief as to age is not a defense to statutory sexual seduction. 110 Nev. 865, 870-71, 877 P.2d 1063, 1066-67 (1994). *Jenkins* is not binding on our decision here since that crime was a strict liability offense in which knowledge of age is not an element of the crime. *Id.* Sexual assault is a general intent crime. *Winnerford H. v. State*, 112 Nev. 520, 526, 915 P.2d 291, 294 (1996). Thus, if a mistake is reasonable, it may be a defense to a charge of sexual assault. NRS 194.010(4).]

Honeycutt's counsel proposed the following instruction, citing instruction 10.65 from the California Jury Instructions for Criminal Cases ("CALJIC") as the sole legal authority:

In the crime of sexual assault, general criminal intent must exist at the time of the commission of the sexual assault. There is no general criminal intent if the defendant had a reasonable and good faith belief that [the victim] voluntarily consented to engage in fellatio and anal intercourse. Therefore, a reasonable and good faith belief that there was a voluntary consent is a defense to such a charge.

If after a consideration of all of the evidence you have a reasonable doubt that the defendant had general criminal intent at the time of the act of fellatio and anal intercourse, you must find him not guilty of such crime.

However, counsel did not include the entire correct instruction based on the evidence in this case. Counsel's proposed instruction omitted the following language:

However, a belief that is based upon ambiguous conduct by an alleged victim that is the product of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the person or another is not a reasonable good faith belief. [fn 25: *California Jury Instructions, Criminal*, 10.65, at 828 (6th ed. 1996).]

The comment to CALJIC 10.65 states:

In *People v. Williams* (1992) 4 Cal.4th 354 [14 Cal. Rptr.2d 441, 841 P.2d 961], it was held that this instruction

14

should not be given absent substantial evidence of equivocal conduct that would have led a defendant to reasonably and in good faith believe consent existed where it did not. Further the instruction should not be given when it is undisputed that the defendant's claim is "based upon the victim's behavior after the defendant had exercised or threatened force, violence, duress, menace or fear of immediate and unlawful bodily injury on the person or another." Where the evidence is conflicting on that issue, the court must give this instruction, if as indicated there is substantial evidence of equivocal conduct, despite the alleged temporal context in which that equivocal conduct occurred. In such situation, the second bracketed paragraph [quoted above] should then be utilized. [fn 26: *Id.*]

The evidence of consent is conflicting in this case, in that the victim testified that the defendant used force and the defendant testified that, not only did the victim consent, but she initiated some of the actions.

Assuming that Honeycutt was entitled to an instruction on mistaken belief of consent, the proposed instruction must correctly state the law. [fn 27: ] Honeycutt's proposed instruction was not "technically deficient in form," as the dissent alleges, but an incorrect statement of the law when there is evidence that the "consent" was achieved through threats, force and violence. Therefore, the district court did not err in refusing to give the instruction.

Exhibit 52.

The Nevada Supreme Court affirmed the lower court's denial of petitioner's claim that trial counsel was ineffective for failing to present a correct jury instruction on mistaken belief of consent, finding it to be without merit. The court specifically stated:

Fifth, appellant claimed that his trial counsel was ineffective for failing to provide the entire instruction for mistaken belief of consent to the district court as a proposed jury instruction. Appellant failed to demonstrate that his counsel was deficient in this regard.

Appellant's trial counsel proffered a jury instruction on the defense theory of reasonable belief of consent. The district court refused to give the proffered instruction. On direct appeal, this court concluded that because appellant's counsel omitted the State's theory of the case from the proposed jury instruction, the proposed instruction was an incorrect statement of the law, and the district court did not err by refusing to give the instruction. [fn 7: *Id.* at 671, 56 P.3d at 369-70] Prior to this court's opinion on direct appeal, this court has never obligated defense counsel to provide both the defense's and State's theories of the case in proffered jury instructions. Appellant's trial counsel could not have anticipated this court's decision on direct appeal, and counsel's inability to do so does not constitute ineffective assistance of counsel. Accordingly, we conclude the district court did not

err in denying this claim.

Exhibit 72.  The Nevada Supreme Court's determination was not an objectively unreasonable

application of *Strickland*.  Trial counsel had no way of knowing that the Nevada Supreme Court, on

appeal, would require defense counsel to proffer not only the defense theory but also the state's

theory of the case in the instruction.  Petitioner has not shown that trial counsel acted deficiently as

trial counsel could not have anticipated the Nevada Supreme Court's ruling on direct appeal.

The court will deny ground one(e).

**6.  Counsel's Failure to Investigate Information and Evidence Available to**
**Support Defense Witnesses and Theories**

In ground one(f) petitioner contends that trial counsel was ineffective for failing to

investigate information and evidence available to support defense witnesses and the defense theory.

Petitioner contends that counsel failed to investigate and show how busy the Hard Rock Hotel was

on the night the incident took place.  Moreover, petitioner argues that counsel failed to investigate

and introduce information regarding where the outside personnel of the casino where.  Victim Bates

testified that the hotel/casino was not busy and no hotel personnel were outside when she and the

petitioner went outside to his vehicle.  Petitioner also asserts that counsel failed to investigate and

introduce records of taxicab companies to show that there were taxis outside of the Hard Rock.

Petitioner states that this information would have cast doubt onto the victim's testimony that there

were no cabs available for her to take back to her hotel.

The Nevada Supreme Court affirmed the state district court's denial of this claim,

stating:

> Sixth, appellant claimed that his trial counsel was ineffective for
> failing to conduct investigation regarding the Hard Rock Hotel and Casino.
> Appellant asserted that such investigation would have revealed that there
> were employees outside and cabs available at the time of the assault,
> contradicting with the victim's testimony.
>
> Appellant failed to demonstrate that his counsel was deficient in this
> regard.  Appellant's counsel elicited testimony from the security manager
> for the Hard Rock that at the time of the assault there would have been two
> bicycle security guards patrolling the parking lot and an employee manning

1
2
3

the valet area at the main entrance.  The security manager also testified that cabs are generally available at the main entrance.  Appellant failed to demonstrate that additional testimony regarding the Hard Rock would have altered the outcome of the trial.  Accordingly, we conclude the district court did not err in denying this claim.

4  Exhibit 72.

5          The Nevada Supreme Court's determination was not an objectively unreasonable

6  application of *Strickland*.  At trial Hard Rock hotel security manager John Barr testified he generally

7  worked on Fridays and Saturdays, in the day, and then would return around approximately 9:00pm

8  until 3:00 or 4:00am.  Exhibit 40, T 95.  Barr told the jury that there were three public entrances to

9  the Hard Rock in 1998.  *Id.*  Barr estimated that between 3:00am and 6:00am on a weekend, several

10  hundred people would come and go from the Hard Rock Hotel.  *Id.* at T 98.  The Hard Rock had two

11  security officers patrolling the parking lots.  *Id.*  In 1998, the parking lot contained approximately

12  1000 spaces, and two individuals could adequately patrol a parking lot that size.  *Id.* at T 99.  There

13  were also valet parkers on duty between 3:00am and 6:00am on the weekends.  *Id.*  Barr testified that

14  there was a night club located in the Hard Rock in 1998 called the Orbit Lounge that would close

15  between 4:00am and 5:00am, depending on demand.  *Id.* at T 100.  Based on Barr's experience, the

16  hotel was still busy at 5:00am in the morning.  *Id.* at T 102.

17          On cross-examination Barr stated that he was not in charge of the valet section, and

18  could not be sure if how many valet parkers were on duty, or where they were located.  *Id.* at T 106-

19  07.  Moreover, Barr testified that he could not tell the exact positions of the security guards

20  patrolling the parking lot in the early morning hours of the night in question.  *Id.* at T 108.  On re-

21  direct Barr stated that although the hotel slows down in the early morning hours, it is still a busy

22  hotel, and when the Orbit Lounge closes, there are lines of people waiting for the valet and for

23  taxicabs.  *Id.* at T 112.

24          Petitioner has not shown that counsel acted deficiently.  Testimony was introduced at

25  trial regarding whether there was personnel at the hotel, and how busy the hotel was the night of the

26  incident.  Petitioner has not shown that any additional investigation or testimony at trial about how

1  busy the hotel was or where the hotel personnel were located outside of the hotel would have

2  changed the outcome of trial.

3       The court will deny ground one(f).

4       **7.  Counsel's Ineffectiveness in Abandoning Petitioner's Interests When He**

5       **Expressed Contempt for Petitioner at Trial**

6       In ground one(g) petitioner alleges that trial counsel was ineffective for abandoning

7  petitioner's interests when he expressed contempt for him at trial.  Petitioner states that counsel

8  called him a "bad guy" and a "terrible boyfriend."  Petitioner also notes that defense counsel stated

9  that he was not liked in jail and that he was not a nice guy.

10       During closing arguments defense counsel stated:

11       Now the prosecution brought in evidence of other crimes, and you'll
    hear a jury instruction saying well, that's not to show – he's not on trial for

12  those other crimes.  Well why did they bring that in?  I mean, evidence to
    show he's not a nice guy.  He's not a nice guy.  But just because he's not

13  a nice guy doesn't mean you can convict him of sexual assault.

14  Exhibit 43, T 54.  Later in the closing arguments counsel told the jury:

15       And that's the Salem witch trials in 1682, but this is Las Vegas in
    1999.  And Todd Honeycutt was targeted by a witch hunt.  He wasn't liked

16  in jail.  Nobody liked him.  David Paule saw him as his get-out-of-jail-free
    card or his get-out-of Nevada card, however you look at it, because he got

17  to go back to California.  He was in jail, but he's just an ordinary felon, not
    a nasty felon like Mr. Honeycutt.  Oh, no.  He doesn't like people that beat

18  up on his mother.  He wouldn't tolerate that.  He was just trying to help.

19       Now who is Mr. Honeycutt?  He's chosen to put his hands – his
    faith in your hands.  He's exercised his constitutional right to go to trial.

20  As we've said, he's not a nice guy.  He's a terrible boyfriend.  He's a three-
    time convicted felon, once for malicious destruction of property when he

21  was 18, once for burglary when he was 20, and then coercion.

22  *Id.* at T 55.

23       Petitioner raised the instant claim in his state habeas corpus petition, and the state

24  district court denied the claim.  On appeal, the Nevada Supreme Court affirmed the district court's

25  denial, stating:

26       Seventh, appellant claimed his trial counsel was ineffective for
    portraying appellant as a "bad guy" and a "terrible boyfriend."  Appellant

1    failed to demonstrate that his counsel was deficient in this regard.
     Although the record reveals that during closing arguments appellant's
2    counsel referred to appellant as a "bad guy" and a "terrible boyfriend,"
     appellant's counsel made these statements in an attempt to argue that
3    appellant's prior conduct does not mean that he committed the instant
     offenses.   "Tactical decisions are virtually unchallengeable absent
4    extraordinary circumstances." [fn 8: *Ford v. State*, 105 Nev. 850, 853, 784
     P.2d 951, 953 (1989) (citing *Strickland*, 466 U.S. at 691).] Appellant failed
5    to demonstrate that acknowledging appellant's faults was not a reasonable
     tactical decision.  Accordingly, we conclude that the district court did not
6    err in denying this claim.

7    Exhibit 72.

8         The Nevada Supreme Court's determination is not an objectively unreasonable

9    application of clearly established federal law, as determined by the United States Supreme Court.

10   The United States Supreme Court has noted that "strategic choices made after thorough investigation

11   of law and facts relevant to plausible options are virtually unchallengeable." *Strickland v.*

12   *Washington*, 466 U.S. 668, 690-91 (1984).  "Whether counsel's actions constituted a 'tactical'

13   decision is a question of fact, and...[a court] must decide whether the state court made an

14   unreasonable determination of the facts in light of the evidence before it."  *Pinholster v. Ayers*, 525

15   F.3d 742 (9th Cir. 2008) (citing *Edwards v. Lamarque*, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

16   banc); *Taylor v. Maddox*, 366 F.3d 992, 999-1000 (9th Cir. 2004)).  There is no indication that

17   counsel acted deficiently when he used the terms "bad buy" and "terrible boyfriend" and told the jury

18   that petitioner was not a nice person.  Counsel was arguing to the jury that even though petitioner

19   may be a "bad guy" that he did not commit the charged crimes.  Petitioner has not shown that but for

20   counsel's alleged deficiencies, the outcome of trial would have been different.

21        The court will deny ground one(g).

22        **8.  Counsel's Failure to Move for Dismissal of the Solicitation Charge**

23        In ground one(h) petitioner alleges that trial counsel was ineffective for failing to

24   move to dismiss the solicitation charge on the basis that the state district court did not have

25   jurisdiction to proceed against him.   Petitioner contends that indictment was improper under NRS

26   172.255, that perjured police testimony was given at the grand jury hearing, that the state failed to

1   present exculpatory evidence, and that the state presented false evidence at the hearing.

2          On appeal the Nevada Supreme Court affirmed the denial of the instant claim,

3   finding:

4          Eighth, appellant claimed that his trial counsel was ineffective for
    failing to move for dismissal of the solicitation charge.  Appellant asserted
5   that the indictment was improper under NRS 172.255, the police presented
    perjured testimony and false evidence to the grand jury, and the State failed
6   to present exculpatory evidence to the grand jury.

7          Appellant failed to demonstrate that his counsel was deficient in this
    regard. Nothing in the record supports appellant's claim that the indictment
8   was not properly filed.  Further, appellant failed to demonstrate that a
    motion to dismiss the indictment would have been successful.  NRS
9   172.145(2) requires the district attorney to present to the grand jury any
    evidence that will explain away the charge.  Contrary to appellant's
10  assertions, his letters stating that he wanted the victim scared would not
    tend to explain away the charge, so long as the prosecutors could establish
11  that he sought to have the victim killed.  One of appellant's letters
    mentioned the victim dying. This was sufficient to establish probable cause
12  to support the indictment.  Finally, any misstatement on the part of Officer
    Hanna regarding any possible deal made with an inmate for his cooperation
13  in obtaining evidence to support the solicitation charge was not sufficient
    to dismiss the indictment.  Accordingly, we conclude the district court did
14  not err in denying this claim. [fn 9: To the extent that appellant also raised
    this claim in the context of a claim of ineffective assistance of appellate
15  counsel, appellant failed to demonstrate that his appellate counsel was
    ineffective, and we conclude that the district court did not err in denying
16  this claim.  *See Kirksey v. State*, 112 Nev. 980, 998, 923 P.2d 1102, 1113-
    14 (1996).]

17
    Exhibit 72.  The Nevada Supreme Court's determination was not an objectively unreasonable
18
    application of *Strickland*.
19
           Petitioner first argues that at the grand jury hearing, the jury foreperson returned an
20
    indictment, and stated that at least twelve members had concurred, but that they had been excused.
21
    Petitioner states that counsel should have moved to dismiss the indictment under NRS 172.255.
22
    NRS 172.255 that "indictment may be found only upon the concurrence of 12 or more jurors."  The
23
    indictment here was found upon by at least twelve members of the grand jury.  Petitioner has not
24
    shown that dismissal of the indictment was warranted and that counsel was deficient for failing to
25
    move for the dismissal of the indictment.
26
           Petitioner also contends that the police gave perjured and false testimony and that the

state failed to present exculpatory evidence of letters in which he stated he only wanted to scare the victim. These claims also fail. NRS 172.145(2) notes that a district attorney must submit evidence to the grand jury that would explain away the charge. The letters in which petitioner stated he wanted to scare the victim would not have explained away the charge, as there was also evidence presented that showed that the petitioner wanted the victim killed.

The knowing use of false or perjured testimony against a defendant to obtain a conviction is unconstitutional. *Napue v. Illinois*, 360 U.S. 264 (1959). An allegation that false or perjured testimony was introduced is not a constitutional violation, absent knowing use by the prosecution. *Carothers v. Rhay*, 594 F.2d 225, 229 (9th Cir. 1979). It is petitioner's burden to show that a statement was false. *Id.* Mere inconsistencies in testimony do not establish knowing use of perjured testimony. *United States v. Sherlock*, 962 F.2d 1349, 1364 (9th Cir. 1992). The prosecution's presentation of contradictory testimony is not improper. *United States. v. Necoechea*, 986 F.2d 1273, 1280 (9th Cir. 1993). There must be an allegation of specific evidence that the prosecutor knew to be false. Where credibility is fully explored by the jury, it is properly a matter for jury consideration. *United States v. Zuno-Arce*, 44 F.3d 1420, 1423 (9th Cir. 1995); *Carothers v. Rhay*, 594 F.2d 225, 229 (9th Cir. 1979). The petitioner's burden for perjured testimony is a reasonable likelihood that the false testimony could have affected the verdict. *United States. v. Agurs*, 427 U.S. 97, 103 (1976); *Giglio v. U.S.*, 405 U.S. 150, 154 (1972). A claim of perjured testimony is subject to harmless error analysis. *Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000) (no prejudice where testimony did not affect the result). Petitioner has not shown that false or perjured testimony was given at the grand jury hearing that would require dismissal of the indictment, or that the state was aware of any allegedly false or perjured testimony and allowed the testimony to stand at the grand jury hearing. Exhibit 74 (attached at docket #40).

The court will deny ground one(h).

///

**9. Counsel's Failure to Request Acquittal Based on Insufficiency of the**

1       **Evidence**

2       In ground one(i) petitioner alleges that trial counsel was ineffective for failing to

3 request acquittal based on the insufficiency of the evidence.

4       The United States Supreme Court has held that when reviewing an insufficiency of

5 the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the

6 evidence in the light most favorable to the prosecution, any rational trier of fact could have found the

7 essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319

8 (1979). The court must assume that the jury resolved any evidentiary conflicts in favor of the

9 prosecution, and the court must defer to that resolution. *Jackson*, 443 U.S. at 326; *Schell v. Witek*,

10 218 F.3d 1017, 1023 (9th Cir. 2000) (*en banc*). The credibility of witnesses is beyond the scope of

11 the court's review of the sufficiency of the evidence. *See Schlup v. Delo*, 513 U.S. 298, 330 (1995).

12 Under the *Jackson* standard, the prosecution has no obligation to rule out every hypothesis except

13 guilt. *Wright v. West*, 505 U.S. 277, 296 (1992) (plurality opinion); *Jackson*, 443 U.S. at 326;

14 *Schell*, 218 F.3d at 1023. *Jackson* presents "a high standard" to habeas petitioners claiming

15 insufficiency of evidence. *Jones v. Wood*, 207 F.3d 557, 563 (9th Cir. 2000).

16       The Nevada Supreme Court affirmed the state district court's denial of this claim,

17 stating the following:

18       Ninth, appellant claimed that his trial counsel was ineffective for failing to move for acquittal due to insufficient evidence. Appellant failed

19 to demonstrate that his counsel was deficient in this regard or that such a motion would have been successful. The record reveals that sufficient

20 evidence supported the jury's finding of guilty on all charges. [fn 10: *See Wilkins v. State*, 96 Nev. 367, 374, 609 P.2d 309, 313 (1980) (holding that

21 sufficient evidence will support a jury conviction if a jury, acting reasonably, could have been convinced by the evidence presented that the

22 defendant was guilty of the charge by beyond a reasonable doubt); *see also Hutchins v. State*, 110 Nev. 103, 109, 867 P.2d 1136, 1140 (1994)

23 (recognizing that the uncorroborated testimony of a victim is sufficient to uphold a rape conviction).] Accordingly, we conclude the district court did

24 not err in denying this claim. [fn 11: To the extent that appellant also raised this claim in the context of a claim of ineffective assistance of appellate

25 counsel, appellant failed to demonstrate that his appellate counsel was ineffective, and we conclude that the district court did not err in denying

26 this claim. *See Kirksey*, 112 Nev. at 998, 923 P.2d at 1113-14.]

Exhibit 72.

This Court agrees with the conclusion of the Nevada Supreme Court.  The court has reviewed the record, and after viewing the evidence in the light most favorable to the prosecution, concludes that any rational trier of fact could have found the petitioner guilty of kidnapping, sexual assault, and solicitation to commit murder.  The Nevada Supreme Court's ruling that there was sufficient evidence to support the petitioner's conviction was not contrary to, or an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court. The issue of credibility of witnesses is beyond the scope of review.  *Schlup v. Delo*, 513 U.S. 298, 330 (1995); *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).  Moreover, the state court's ruling was not based on an unreasonable determination of facts in light of the evidence.  28 U.S.C. § 2254(d).  The court will deny habeas relief with respect to ground one(i).

### 10. Counsel's Failure to Investigate, Interview, or Call Witnesses

In ground one(j) petitioner alleges that trial counsel was ineffective for failing to investigate, interview, or call witnesses at trial.  Specifically petitioner contends that counsel did not investigate, interview, or call Lisa Saponaro, Robin Hoppe, and Joann Klassen.  Petitioner notes that these three witnesses would have called into question Lisa Bard's testimony that the petitioner had sexually assaulted her in 1997.  Petitioner states that Saponaro would have testified that the petitioner was with her when Bard, petitioner's ex-girlfriend, said he assaulted her.  Hoppe would have testified that petitioner was at the Tom & Jerry bar on the night he allegedly assault Bard. Klassen would have testified that Bard was committed to a mental ward for attempted suicide relating to an ex-boyfriend, and that Bard told her that petitioner did not assault her and that she just wanted petitioner out of her apartment.

The Nevada Supreme Court affirmed the state district court's denial of the instant claim, stating:

> Tenth, appellant claimed his trial counsel was ineffective for failing to interview Lisa Saponaro, Robin Hoppe and Joann Klassen and have them testify on his behalf.  Appellant asserted that the testimony of these individuals would have contradicted and undermined Lisa Bard's testimony

regarding appellant's alleged prior sexual assault of her.

Appellant failed to demonstrate that his counsel was deficient in this regard or that, had these individuals testified on his behalf, the outcome of the trial would have been different.  Appellant claimed that Saponaro and Hoppe would have testified that they were with him at the time the alleged prior assault occurred.  Appellant testified to this same information at his second trial. [fn 12: Appellant's first trial resulted in a hung jury.] Although Saponaro testified at appellant's first trial that she was with appellant at the time he allegedly committed the assault on Lisa Bard, on cross-examination, Saponaro stated that she never came forward with this alibi information, and appellant ended up entering an *Alford* [fn 13: *North Carolina v. Alford*, 400 U.S. 25 (1970).] plea to a charge of coercion for the incident with Bard.  Appellant claimed Klassen would have testified that Bard told her that appellant did not assault her, but rather made the story up.  This information was presented to the jury through the testimony of an investigator who investigated the prior incident.  Appellant also failed to demonstrate that his counsel would have been able to locate either Hoppe or Klassen to testify at his second trial.  In his petition appellant stated that both of these individuals have moved, they no longer worked at the same place, and he did not know how to locate either of them.  Accordingly, we conclude the district court did not err in denying this claim.

Exhibit 72.  The Nevada Supreme Court's determination was not objectively unreasonable determination, as there is no indication that trial counsel was ineffective for failing to investigate, interview, or call Saponaro, Hoppe, and Klassen at trial.  Petitioner has not shown that the failure to call these witnesses prejudiced the outcome of trial.

Lisa Bard testified as a rebuttal witness for the state.  Exhibit 42.  Bard testified that she and the petitioner dated, and after they broke up, but before petitioner moved out of her apartment, the petitioner sexually assaulted her.  *Id.* at T 76-89.  Petitioner testified on cross-examination that he did not sexually assault his ex-girlfriend, Lisa Bard.  Exhibit 41, T 116.  Private investigator Collette Putnam testified as a sur-rebuttal witness and stated Bard told her that the petitioner did not rape her and that she made the incident up as she was angry with the petitioner and wanted him to move out of the apartment.  Exhibit 42, T 124.  Moreover, the petitioner testified that he entered into an *Alford* plea to the charge of coercion regarding the incident relating to Bard.  *Id.* at T 128-29.  Petitioner also testified that the night of the incident with Bard, that he had gone to the Tom & Jerry bar with a friend, and met Lisa Saponaro there.  *Id.* at 132-33.  Petitioner testified that he was with Lisa Saponaro and his friend Joe during the time he allegedly sexually assaulted Bard.

24

*Id.* at T 134.  Petitioner stated that when he went home he got into a fight with Bard, he went to sleep and woke up when the police arrived at the apartment.  *Id.* at T 134-35.

Testimony was introduced at trial that could call into question witness Bard's truthfulness about whether the petitioner sexually assaulted her.  Petitioner has not shown that trial counsel acted deficiently, or that this deficiency prejudiced the outcome of the trial.  The court will deny ground one(j).

## 11.  Counsel's Failure to Object to Certain Requests and Instances at Trial

Petitioner next alleges in ground one(k) that trial counsel was ineffective for failing to object to certain requests and instances at trial.  Petitioner argues that counsel failed to object to: (1) the district attorney's request to do a demonstration on the petition, (2) the state's inquiry about the solicitation to commit murder charges, when the subject was never addressed during direct examination, (3) the state's motion to admit evidence of other crimes, wrongs, or bad acts, (4) the cross-examination of petitioner and defense witness Dixon, in which the prosecutor asked irrelevant questions and made prejudicial comments, (5) the state's closing arguments, in which there were numerous instances of prosecutorial misconduct, (6) the playing of an inaudible videotape, and (7) jury instruction number 18, which contained incorrect wording.

The Nevada Supreme Court affirmed the denial of the instant claim, stating:

> Eleventh, appellant claimed that his trial counsel was ineffective for failing to object to multiple instances of prosecutorial misconduct.  This claim is belied by the record. [fn 14: *See Hargrove v. State*, 100 Nev. 498, 503, 686 P.2d 222, 225 (1984) (a petitioner is not entitled to an evidentiary hearing on claims belied by the record).  The record reveals that appellant's counsel objected to the conduct challenged by appellant.  Accordingly, we conclude the district court did not err in denying this claim.

Exhibit 72.  Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court.

Petitioner first contends that counsel should have objected to the state's request to do a demonstration on the petitioner at trial.  The district attorney did ask the court for permission to

perform a demonstration when the courtroom was set up with chairs that approximated the interior of the minivan. Exhibit 42, T 55. After the demonstration, outside the presence of the jury the following took place.

> Mr. Kephart [state prosecutor]: I do, Your Honor. Your Honor, I just think it incumbent for the record for any future scrutiny that may be placed on this trial that the record reflects what I had done prior to the close of testimony of Todd Honeycutt. For the record, I approached him. He was on the witness stand. I had him place his head against the back of the wall. I put my left arm across his shoulder. I asked his to count to ten. When he started counting, I applied pressure to his throat with my arm and he coughed at number two. The defense objected to mischaracterization of the testimony. The Court sustained that objection, Your Honor. Thank you.

> Mr. Yampolsky: And Your Honor did sustain as mischaracterized testimony, and I wasn't going to bring this up, but it would seem that this is prosecutorial misconduct that he approach a defendant like this and could be grounds for a mistrial. I'm not asking for one at this time, but I'll leave it at that.

> The Court: Thank you. The Court would note for the record that even though demonstrations are proper in court, at some point that last demonstration came over the line terms of this Court because it potentially could have provoked an incident in this court, and this Court will just not tolerate that under any circumstances.

Exhibit 42, T 57-58. Although trial counsel did not object prior to the state performing the demonstration, defense counsel did object during the demonstration, and the trial court sustained the objection. Petitioner has not shown that trial counsel should have known what type of demonstration the state was going to perform, and that he should have objected prior to the demonstration being performed, nor has he shown that the failure to object prior to the demonstration prejudiced the outcome of the trial.

Petitioner's claim that counsel failed to object to the state's improper inquiry about the solicitation to commit murder on cross-examination is also refuted by the record. During petitioner's testimony at trial, the state prosecutor asked petitioner a question relating to the solicitation to commit murder charge. Exhibit 41, T 91. Petitioner refused to answer the question. *Id.* Petitioner told the court that he was choosing to remain silent on anything relating to the solicitation to commit murder charge. *Id.* at T 92. After a brief recess in which defense counsel

1    talked to the petitioner, petitioner again refused to answer any questions relating to the solicitation to

2    commit murder charge.  *Id.* at T 93.  After another discussion the court limited the testimony to the

3    sexual assault for that day.  *Id.* at T 93-94.

4            The following day, the trial court entertained argument from both parties on the issue

5    of whether petitioner could assert a partial privilege, or could choose to testify to certain counts and

6    not to others.  Exhibit 42.  Defense counsel argued on petitioner's behalf that petitioner could remain

7    silent as to the solicitation to commit murder charge.  *Id.*  The court determined that petitioner, if he

8    wished to testify, had to answer questions about all matters in the case, including the solicitation to

9    commit murder charge.  *Id.*  While defense counsel did not object to the state's specific question

10   during cross-examination, defense counsel did oppose the state's argument that petitioner had to

11   answer questions relating to the solicitation charge.  Petitioner has not shown that counsel acted

12   deficiently, or that any alleged deficiency prejudiced the outcome of the trial.

13           With respect to counsel's failure to object to the state's motion to admit evidence of

14   other crimes, wrongs, or bad acts, petitioner's claim also fails.  Prior to petitioner's first trial, the

15   state moved to admit evidence of other crimes, wrongs, or bad acts at trial.  Exhibit 2.  Defense

16   counsel filed a written opposition, and argued at the hearing on the motion that the court should not

17   allow the state to introduce evidence or testimony that the petitioner previously sexually assaulted

18   Lisa Bard.  Exhibits 3-5.  Prior to the second trial, against defense counsel opposed the state's

19   motion to admit evidence of other crimes, wrongs, or bad acts.  Exhibit 31.  Petitioner's contention

20   that counsel failed to object to the state's motion is refuted by the record.

21           Petitioner also has not shown that counsel was ineffective for failing to object during

22   the cross-examination of the petitioner and defense witness Dixon.  Petitioner contends that the

23   prosecutor made prejudicial comments, asked irrelevant questions, and made sarcastic observations.

24   Defense counsel did make objections to questions asked by the prosecutor during cross-examination

25   of the petitioner and of witness Dixon.  Petitioner has not shown that counsel failed to make

26   additional objections that were warranted, or that the failure to make these objections prejudiced the

1   outcome of the trial.

2          Petitioner also asserts that counsel failed to object to the playing of an inaudible

3   videotape during trial.   Petitioner's claim is belied by the record.  First, prior to trial, defense

4   counsel opposed the introduction of the videotape at trial.  Exhibit 30.  The issue was discussed prior

5   to the start of trial.  Exhibit 33.  The court determined that the videotape would be admitted, but

6   portions that could not be heard or where nothing was spoken on tape would be redacted.  *Id.* at T

7   13-15.  During trial, the state played a videotape at trial that had portions redacted.  Exhibit 38, T 4.

8   Defense counsel object to the introduction of the videotape.  *Id.* It was noted that the volume on the

9   television was not working properly so another television was brought into the courtroom.  *Id.*   The

10  videotape was then played for the jury.  *Id.* at T 5.  There was no indication that the videotape could

11  not be heard.  *Id.*  Petitioner has not shown that trial counsel was ineffective, or that any deficiency

12  on the part of counsel prejudiced the outcome of trial.

13         The record also refutes petitioner's argument regarding counsel's failure to object

14  during the state's closing argument.  While counsel did not object during the closing argument, the

15  state did not appear to make any improper arguments.  Petitioner has not shown that counsel's failure

16  to object prejudiced the outcome of the proceedings.  Finally, with respect to whether counsel failed

17  to object to jury instruction number 18, petitioner has not shown that the jury instruction contained

18  improper language.  Therefore, counsel did not act deficiently in failing to object to the instruction.

19         The court will deny ground one(k).

20         **12. Counsel's Failure to Adequately Cross-examine, Prepare, and Present**

21             **Inconsistent Statements**

22         In ground one(l) petitioner contends that trial counsel was ineffective for failing to

23  adequately cross-examine, prepare, and present inconsistent statements and impeach witnesses Bates,

24  Farrell, Bard, Fisher, and Maholick with their inconsistent statements.

25         The Nevada Supreme Court affirmed the state district court's denial of this claim on

26  appeal, stating:

28

1

Twelfth, appellant claimed that his trial counsel was ineffective for failing to adequately cross-examine the State's witnesses. Appellant failed

2

to demonstrate that his counsel was deficient in this regard. The record reveals that appellant's counsel conducted a thorough cross-examination of

3

the State's witnesses and exposed discrepancies and inconsistencies in the witnesses' statements. Appellant failed to identify what additional

4

questions his counsel should have asked on cross-examination that would have altered the outcome of his trial. Accordingly, we conclude the district

5

court did not err in denying this claim.

6

Exhibit 72. The Nevada Supreme Court's determination was not objectively unreasonable. Defense

7

counsel cross-examined each of the listed witnesses at trial, and asked each about previous

8

statements if they had made previous statements in the case. Exhibits 38-42. There is no indication

9

that defense counsel did not conduct adequate cross-examination of each witness. Furthermore,

10

petitioner has not demonstrated that any additional cross-examination by counsel would have change

11

the outcome of the trial.

12

**13. Counsel's Failure to Present Exculpatory Evidence**

13

In ground one(m) petitioner argues that trial counsel was ineffective for failing to

14

present evidence that petitioner only wanted to scare victim Bates and not have her murdered.

15

Petitioner contends that trial counsel failed to present to the jury a letter that petitioner wrote which

16

stated that he wished to scare the victim so that she would not testify at trial.

17

The Nevada Supreme Court affirmed the state district court's denial of this claim,

18

finding the following:

19

Thirteenth, appellant claimed that his trial counsel was ineffective for failing to present to the jury his letters that state he only wanted the

20

victim scared. Appellant asserted that these letters would have undermined the State's claim that he wanted the victim killed. Appellant failed to

21

demonstrated that the presentation of the letters would have altered the outcome of his trial. Even assuming some of the letters stated he only

22

wanted the victim scared, at least one of the letters referenced the victim dying, and overwhelming evidence supported appellant's conviction for

23

solicitation to commit murder. Accordingly, we conclude the district court did not err in denying this claim.

24

Exhibit 72.

25

The Nevada Supreme Court's determination was not an objectively unreasonable

26

application of *Strickland*. Petitioner has not shown that trial counsel's failure to introduce the letters

29

1    at trial prejudiced the outcome of trial.  David Paule testified at trial that petitioner wanted the victim

2    "taken out" and he understood that to mean that he wanted her killed.  Exhibit 40, T 6.  Paule stated

3    that petitioner gave him a paper with the victim's address, phone number, and other identifying

4    information on it.  *Id.* at T 11.  Detective Hanna, involved in the investigation of the solicitation to

5    commit murder, had received a warrant to search petitioner's mail.  Exhibit 39, T 115.  Some of the

6    letters referenced the victim not making it to the trial, so that the petitioner would get out of jail.  *Id.*

7    at T 116-19.

8            Detective Preusch, acting undercover, met with the petitioner at the jail, and discussed

9    getting paid to kill the victim.  Exhibit 40, T 35-47.  Petitioner told the detective that he did not care

10   what happened to Bates, as long as she disappeared.  *Id.* at T 47.  The state also played the taped

11   conversation between the petitioner and Preusch for the jury.  Preusch had no doubts that the

12   petitioner was paying him to kill victim Bates.  *Id.* at T 48.  Petitioner testified that he did not want

13   to have the victim killed, but just scared.  Exhibit 42, T 7.  Petitioner cannot show that the failure to

14   introduce other letters that allegedly stated that he wanted to scare the victim prejudiced the outcome

15   of trial.

16           The court will deny ground one(m).

17   **B. Ground Two**

18           In his second ground for relief petitioner alleges that appellate counsel was ineffective

19   for (1) failing to argue on appeal that the Luxor videotape was inaudible, (2) failing to raise on

20   appeal the issue that the statements made to the undercover agent should have been suppressed, (3)

21   failing to argue on appeal that the trial court had no jurisdiction to proceed against him based on the

22   solicitation to commit murder charge based on an improper indictment, perjured police testimony,

23   the state's failure to present exculpatory evidence, and false evidence, and (4) failing to argue on

24   appeal the trial court's refusal to reconsider the grant of the state's motion to admit evidence of other

25   crimes, wrongs, or bad acts.

26           "Claims of ineffective assistance of appellate counsel are reviewed according to the

30

standard announced in *Strickland*." *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002).  A

petitioner must show that counsel unreasonably failed to discover non-frivolous issues and there was

a reasonable probability that but for counsel's failures, he would have prevailed on his appeal.  *Smith*

*v. Robbins*, 528 U.S. 259, 285 (2000).

The Nevada Supreme Court considered the instant claims on appeal from the lower

court's denial of the state habeas corpus petition.  The court found the petitioner's first, second, and

fourth subclaims to be without merit, stating:

> Appellant also raised three claims of ineffective assistance of
> appellate counsel. To state a claim of ineffective assistance of appellate
> counsel, a petitioner must demonstrate that counsel's performance was
> deficient in that it fell below an objective standard of reasonableness, and
> resulted in prejudice such that the omitted issue would have a reasonable
> probability of success on appeal. [fn 15: *Kirksey*, 112 Nev. At 998, 923
> P.2d at 1113-14 (citing to *Strickland*, 466 U.S. 668).] Appellate counsel
> is not required to raised every non-frivolous issue on appeal. [fn 16: *Jones
> v. Barnes*, 463 U.S. 745, 751 (1983).] This court has held that appellate
> counsel will be most effective when every conceivable issue is not raised
> on appeal. [fn 17: *Ford*, 105 Nev. At 853, 784 P.2d at 953.]

> First, appellant claimed that his appellate counsel was ineffective
> for failing to appeal the introduction of the Luxor videotape on the basis of
> inaudibility. Appellant failed to demonstrate that this issue would have had
> a reasonable probability of success on appeal.  The record reveals that
> although portions of the videotape are inaudible, the videotape was
> redacted to remove large portions where the victim was inaudible or just
> crying. The record further reveals that the videotape, as redacted, was not
> entirely inaudible since both the prosecution and the defense referred to
> statements made on the videotape.  Additionally, on direct appeal, this
> court rejected appellant's other challenges to the admission of the
> videotape. [fn 18: *Honeycutt*, 118 Nev. At 666 n.6, 56 P.3d at 366 n.6.]
> Accordingly, we conclude the district court did not err in denying this
> claim.

> Second, appellant claimed that his appellate counsel was ineffective
> for failing to appeal the improper introduction of undercover agent
> testimony.  This claim is belied by the record. [fn 19: *See Hargrove*, 100
> Nev. At 503, 686 P.2d at 225.] The record reveals that this claim was raised
> on direct appeal and this court concluded the claim lack merit. [fn 20:
> *Honeycutt*, 118 Nev. 666 n.6, 56 P.3d at 366 n.6].  Accordingly, we
> conclude that the district court did not err in denying this claim.

> Third, appellant claimed his appellate counsel was ineffective for
> failing to appeal the district court's refusal to revisit the issue of admitting
> Bard's testimony regarding the prior bad act.  Appellant failed to
> demonstrate that this claim would have had a reasonable probability of

1  success on appeal.  On direct appeal this court reviewed the admission of
   Bard's testimony and concluded that the district court did not abuse its
2  discretion in admitting the testimony. [fn 21: *Id.* at 672-73, 56 P.3d at 370.]
   Accordingly, we conclude the district court did not err in denying this
3  claim.

4  Exhibit 72.  Moreover, in discussing and rejecting ground one(h), the court also rejected petitioner's

5  third subclaim raised here.  The court stated that to the extent petitioner was raising the claim as an

6  ineffective assistance of appellate counsel claim, petitioner had failed to demonstrate that his

7  appellate counsel was ineffective.  *Id.* at 7, n.9.

8        Petitioner has failed to meet his burden of proving that the Nevada Supreme Court's

9  ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as

10 determined by the United States Supreme Court.  In his first subclaim petitioner contends that

11 counsel should have argued on appeal that the Luxor videotape was inaudible.  Petitioner cannot

12 show that there is a reasonable probability that this claim would have prevailed on appeal.  While

13 portions of the videotape may have been inaudible, the tape was redacted to remove the majority of

14 the inaudible parts of the tape.  Exhibits 33 and 38.  There were initially problems hearing the tape

15 due to faulty equipment, but the equipment was replaced, and there is no indication that the

16 videotape played for the jury was completely inaudible, as both parties referenced portions of the

17 videotape at trial.  Exhibit 38.

18       In his second subclaim petitioner asserts that counsel failed to raise on appeal the

19 issue that his statements made to the undercover police officer should have been suppressed.  This

20 claim is belied by the record.  Appellate counsel did raise the instant ground on direct appeal, and the

21 Nevada Supreme Court rejected the claim.  Exhibit 52.  Counsel cannot be ineffective when he did

22 raise the instant claim on direct appeal.

23       In his third subclaim petitioner alleges that appellate counsel failed to raise the issue

24 that the trial court had no jurisdiction to proceed against him on the solicitation to commit murder

25 charge based on an improper indictment, perjured police testimony and the failure to present

26 exculpatory evidence.  This court addressed this claim, in the context of ineffective assistance of trial

counsel, and found that petitioner had not shown that dismissal of the indictment was warranted. There is no indication that appellate counsel was deficient for failing to raise this claim, or that there is a reasonable probability that this claim would have been meritorious on appeal.

Finally, in his fourth subclaim petitioner alleges that appellate counsel was ineffective for failing to argue on appeal that the trial court erred in refusing to reconsider the grant of the state's motion to admit witness Bard's testimony. Appellate counsel did raise the instant ground on direct appeal, and the Nevada Supreme Court rejected the claim. Exhibit 52. Appellate counsel cannot be ineffective when he did raise the claim on direct appeal.

The court will deny ground two.

**C. Ground Four**

In ground four petitioner alleges that the trial court erred in admitting his statements made to undercover police agents, without an attorney, while in jail for the sexual assault and kidnapping charges. The statements and other evidence were later used to indict the petitioner for solicitation to commit murder. Prior to trial defense counsel moved to suppress any statements made by petitioner to law enforcement personnel or their agents regarding the solicitation charge. Exhibit 25. Counsel argued that petitioner's Fifth and Sixth Amendment rights were violated when law enforcement deliberately elicited information and incriminating statements from petitioner. *Id.* After hearing argument on the issues, the state district court denied the motion to suppress. Exhibits 28 and 29. Petitioner raised this ground on direct appeal from his judgment of conviction and the Nevada Supreme Court rejected this claim, finding the claim was without merit. Exhibit 52.

The Sixth Amendment prohibits government agents from "deliberately eliciting" incriminating statements from a criminal defendant in the absence of his lawyer once the defendant's right to counsel has attached in the case. *Massiah v. United States*, 377 U.S. 201 (1964). The *Massiah* test has been extended to incriminating statements made by criminal defendants to jailhouse informants. *United States v. Henry*, 447 U.S. 264 (1980). The "primary concern of the *Massiah* line of decisions is secret interrogation by investigatory techniques that are the equivalent of direct police

1   interrogation." *Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986).  A criminal defendant must

2   "demonstrate that the police and their informant took some action, beyond mere listening, that was

3   designed deliberately to elicit incriminating remarks." *Id.*   However, in *Maine v. Moulton*, 474 U.S.

4   159, 180 n.16 (1985), the United States Supreme Court noted that "[i]ncriminating statements

5   pertaining to other crimes, as to which the Sixth Amendment right has not yet attached, are, of

6   course, admissible at a trial of those offenses."

7            The Nevada Supreme Court's rejection of petitioner's claim that the trial court erred

8   in admitting incriminating statements made to an informant and an undercover agent without an

9   attorney was not objectively unreasonable.  Petitioner made incriminating statements to witness

10  Paule and detective Preusch about a crime for which he had not yet been charged.  Therefore,

11  petitioner's Sixth Amendment right to counsel had not yet attached, and the incriminating statements

12  were admissible at trial.  *Moulton*, 474 U.S. at 180 n.16.  Petitioner's right to counsel had attached

13  regarding the sexual assault and kidnapping, thus the state could not have deliberately elicited

14  incriminating statements from the petitioner regarding those charges.

15           Petitioner also has not demonstrated that his statements should have been suppressed

16  because he was not read his *Miranda*[3] rights.  Generally, police are required to give a suspect

17  *Miranda* warnings only when that person is "in custody."  *Thompson v. Keohane*, 516 U.S. 99, 101

18  (1995).  While petitioner was "in custody," as he was being held in jail for re-trial on the kidnapping

19  and sexual assault charges, the undercover police officer was not required to give petitioner *Miranda*

20  warnings before asking questions regarding the solicitation to commit murder.  *See Illinois v.*

21  *Perkins*, 496 U.S. 292 (1990) (finding *Miranda* warnings "are not required to safeguard the

22  constitutional rights of inmates who make voluntary statements to undercover agents").  Petitioner

23  has not shown that the trial court erred when it denied his motion to suppress.

24           The court will deny ground four.

25           **D. Ground Six**

26  _____

        [3]   *Miranda v. Arizona*, 384 U.S. 436 (1996).

1    Petitioner argues in his sixth ground for relief that his Fifth and Fourteenth

2   Amendment rights to due process were violated when the trial court abused its discretion in allowing

3   the state prosecutor to perform a demonstration on him at trial.  The prosecution choked petitioner

4   while he was on the witness stand as a demonstration to show what had happened to victim Bates.

5   Petitioner raised the instant claim on direct appeal.  The Nevada Supreme Court rejected this claim,

6   stating:

7           We agree with Honeycutt that there was an instance of prosecutorial
        misconduct; namely, the prosecutor choking Honeycutt on the stand as a
8       demonstration of what happened to the victim.  The action was clearly
        improper.  Honeycutt testified on direct examination that the sexual assault
9       could not have occurred as the victim had described it and gave an in-court
        demonstration with a neutral party to corroborate his story.  On cross-
10      examination, the prosecutor asked if he could do his own in-court
        demonstration.  Upon receiving permission, he approached Honeycutt,
11      placed his arm across Honeycutt's throat and began pushing hard.
        Honeycutt's eyes began watering after a few seconds and he began to
12      choke.  Defense counsel immediately objected and requested a mistrial.
        The district court sustained the objection but denied the motion for a
13      mistrial.

14          We can see absolutely no reason why a prosecutor would take such
        an action.  The decision to physically assault a defendant while on the stand
15      goes well beyond the accepted bounds of permissible advocacy.  However,
        we will not reverse the convictions on this ground because Honeycutt
16      consented to the demonstration, and there is no indication that the action
        prejudiced Honeycutt in any way.  On the contrary, it would appear that it
17      would have prejudiced the State rather than Honeycutt, and Honeycutt
        reacted in a way which reflected well on him, rather than in a way which
18      would prejudice him.  This is in marked contrast to the situation described
        in *Hollaway v. State*, [fn 33: 116 Nev. 732, 742, 6 P.3d 987, 994 (2000).]
19      where a stun belt was activated during closing arguments in a murder trial.
        In that case, the implication to the jury was that the State regarded
20      Hollaway as extremely dangerous.  Here, because of Honeycutt's reaction,
        there was no implication that Honeycutt was anything other than a
21      gentleman, and he suffered no prejudice.  Because of Honeycutt's conduct,
        the prosecutorial misconduct in conducting the demonstration was
22      harmless, and the district court appropriately denied Honeycutt's motion for
        a mistrial.

23   Exhibit 52.

24          The Nevada Supreme Court's determination was not objectively unreasonable.

25   Although the prosecutor's actions were improper, petitioner cannot show that the prosecutor's

26   actions prejudiced the outcome of the trial, or had a substantial and injurious effect on the jury or

35

influenced the verdict. *Brecht v. Anderson*, 507 U.S. 619 (1993). If anything, the state prosecutor's actions were likely to have prejudiced the state's case and would not have prejudiced the petitioner.

The court will deny ground six.

**E. Ground Nine**

In ground nine petitioner contends that his Fifth, Sixth, and Fourteenth Amendment rights were violated when the Nevada Supreme Court failed to conduct a fair and adequate review on direct appeal. Petitioner states that the "facts" listed in the facts section of the Nevada Supreme Court were not the "actual facts of this case." Moreover, petitioner states it is disconcerting that two of the judges on the panel could make their determinations as they did.

The court will deny this ground for relief. Petitioner has not shown that the Nevada Supreme Court did not fully review his case and arguments on appeal. Petitioner merely takes issue with the outcome of his appeal. Petitioner has not stated any facts in the instant ground that would warrant habeas corpus relief.

**F. Ground Ten**

In his tenth ground for relief petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment rights were violated by the trial court when it improperly joined, and then refused to sever, the solicitation to commit murder count from the sexual assault and kidnapping counts. Petitioner raised this claim in his direct appeal, and the Nevada Supreme Court found the claim was without merit. Exhibit 52. The court stated:

> Honeycutt alleges that the district court erred in denying his motion to sever the solicitation to commit murder charge from the sexual assault and kidnapping charges. He claims that he wanted to testify on the sexual assault and kidnapping charges, but not on the solicitation charge. The district court made clear that Honeycutt could assert his right to remain silent as to all of the charges or testify as to all of the charges, but could not testify as to some, but not the others. Therefore, Honeycutt chose to testify as to all of the charges and now asserts that his Fifth Amendment rights were violated.

> NRS 173.115 provides:

> > Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the

offenses charges, whether felonies or misdemeanors or both, are:

....

2.  Based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Clearly, the charge of solicitation to  murder the victim/principal witness in a sexual assault and kidnapping case is factually connected to the sexual assault and kidnapping.  The charges were properly joined under NRS 173.115(2).

"The decision to sever is left to the discretion of the trial court, and an appellant has the 'heavy burden' of showing that the court abused its discretion." [fn 7: *Middleton v. State*, 114 Nev. 1089, 1108, 968 P.2d 296, 309 (1998) (citing *Amen v. State*, 106 Nev. 749, 756, 801 P.2d 1354, 1359 (1990)).] Failure to sever requires reversal only if the joinder has "a substantial and injurious effect on the jury's verdict." [fn 8: *Id.*] "The test is whether joinder is so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever." [fn 9: *United States v. Brashier*, 548 F.2d 1315, 1323 (9th Cir. 1976).] To require severance, the defendant must demonstrate that a joint trial would be "manifestly prejudicial." [fn 10: *United States v. Bronco*, 597 F.2d 1300, 1302 (9th Cir. 1979).] The simultaneous trial of the offenses must render the trial fundamentally unfair, and hence, result in a violation of due process. [fn 11: *Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir. 1991).] In this case, in a trial of the solicitation to commit murder charge, the sexual assault and kidnapping would be admissible to establish motive, and in a trial of the sexual assault and kidnapping charges, the solicitation to commit murder would be admissible to show consciousness of guilt. [fn 12: *Abram v. State*, 95 Nev. 352, 356-57 594 P.2d 1143, 1145-46 (1979) (threats against witness relevant to consciousness of guilt).] Cross-admissibility of the evidence in the two separate charges is one of the key factors in determining whether joinder is appropriate.  As this court said in *Middleton v. State*, "'[i]f...evidence of one charge would be cross-admissible in evidence at a separate trial on another charge, then both charges may be tried together and need not be severed.'" [fn 13: 114 Nev. 1089, 1108, 968 P.2d 296, 309 (1998) (quoting *Mitchell v. State*, 105 Nev. 735, 738, 782 P.2d 1340, 1342 (1989)).] The district court did not err in not severing Honeycutt's charges for trial.

Honeycutt claims his Fifth Amendment rights were violated because he was not allowed to testify on the sexual assault and kidnapping charges while simultaneously asserting his Fifth Amendment right to remain silent on the solicitation charge.  The United States Court of Appeals for the Seventh Circuit has stated: "'[S]everance is not required every time a defendant wishes to testify to one charge but to remain silent on another. If that were the law, a court would be divested of all control over the matter of severance an the choice would be entrusted to the defendant.'" [fn 14: *United States v. Dixon*, 184 F.3d 643, 646 (7th Cir. 1999) (quoting *United States v. Alexander*, 135 F.3d 470, 477 (7th Cir. 1998)).] The burden rests

on the defendant to present enough information regarding the nature of the testimony he wishes to give on the one count and his reasons for not wishing to testify on the other to satisfy the court that his claim of prejudice is genuine, and to enable it intelligently to weigh the considerations of economy and expedition in judicial administration against the defendant's interest in having a free choice with respect to testifying. [fn 15: *Baker v. United States*, 401 F.2d 958, 977 (D.C. Cir. 1968).] Honeycutt made no such detailed showing.  "To establish that joinder was prejudicial 'requires more than a mere showing that severance might have made acquittal more likely.'" [fn 16: *Middleton*, 114 Nev. at 1108, 968 P.2d at 309 (quoting *United States v. Wilson*, 715 F.2d 1164, 1171 (7th Cir. 1983)); *United States v. Campanale*, 518 F.2d 352, 359 (9th Cir. 1975).]

Honeycutt argued that severance should be granted because he wished to present inconsistent defenses, but his defenses were not inconsistent.  Wanting to testify as to one offense and not as to another is not an inconsistent defense; it merely reflects a different tactic on each charge.  The district court clearly indicated that Honeycutt could choose to assert his Fifth Amendment right not to testify in the second trial, even though he testified in the first trial. [fn 17: The dissent argues that by testifying at his first trial, Honeycutt waived his Fifth Amendment right to remain silent.  Despite the fact that Honeycutt testified at his first trial, the district court made clear that Honeycutt could choose not to testify at his second trial.  The district court made clear that Honeycutt would be treated at the second trial as though he had never testified, thus, in effect reinstating his Fifth Amendment rights.  The determination of whether to admit evidence is within the sound discretion of the district court, and that determination will not be disturbed unless manifestly wrong.  *Petrocelli v. State*, 101 Nev. 46, 52, 692 P.2d 503, 508 (1985).  The district court thus assured that the joinder of the charges would result in no fundamental unfairness.  It cannot be a manifest abuse of discretion to admit evidence otherwise admissible in order to assure fundamental fairness.] And there is no violation of Honeycutt's rights by making him elect to testify as to all of the charges or to none at all. [fn 18: *Holmes v. Gray*, 526 F.2d 622, 626 (7th Cir. 1975).] Criminal defendants routinely face a choice between complete silence and presenting a defense.  This has never been though an invasion of the privilege against compelled self-incrimination. [fn 19: *Id.*]

Honeycutt fails to demonstrate any fundamental unfairness or a violation of his rights in the joinder of the counts of sexual assault, kidnapping, and solicitation to commit murder.  The district court did not abuse its discretion in denying Honeycutt's motion to sever the counts.

*Id.*

"The propriety of...consolidation rests within the sound discretion of the state trial judge."  *Fields v. Woodford*, 309 F.3d 1095, 1110 (9th Cir. 2002) (citations omitted).  The joinder of offenses "must actually render petitioner's state trial fundamentally unfair and hence, violative of due process," in order for habeas relief to be granted.  *Id.  See also Davis v. Woodford*, 384 F.3d 628,

38

638 (9th Cir. 2004) (citing *Sandoval v. Calderon*, 241 F.3d 765, 771-72 (9th Cir. 2001)).  The

prejudice to a trial is shown if the joinder of offenses had a "substantial and injurious effect or

influence in determining the jury's verdict."  *Brecht v. Abramson*, 507 U.S. 619, 637 (1993);

*Sandoval*, 241 F.3d at 772.   The Ninth Circuit has also stated:

> We have recognized that the risk of undue prejudice is particularly great
> whenever joinder of counts allows evidence of other crimes to be
> introduced in a trial where the evidence would otherwise be inadmissible.
> *See United States v. Lewis*, 787 F.2d 1318, 1322 (9th Cir. 1986).  Undue
> prejudice may also arise from the joinder of a strong evidentiary case with
> a weaker one.  *See id.*; *Bean*, 163 F.3d at 1085.  The reason there is danger
> in both situations is that it is difficult for a jury to compartmentalize the
> damaging information.  *See Bean*, 163 F.3d at 1084.

*Sandoval*, 241 F.3d at 772.

The Nevada Supreme Court's determination that joinder was proper and that the trial

court did not abuse its discretion in failing to sever the charges is not objectively unreasonable.  This

was not a case where the trial court joined a strong evidentiary case with a weaker case.  There was

evidence to support each charge independently.  Moreover, as the Nevada Supreme Court found, the

bad act evidence admitted at trial that petitioner complained of would have been admissible even if

the offenses were tried separately.  There is no indication that the joinder of the sexual assault

charges with the solicitation to commit murder charge had a substantial or injurious effect on the jury

which rendered the petitioner's trial fundamentally unfair.

The court will deny this claim.

**G.  Ground Eleven**

In ground eleven petitioner contends that his Fifth, Sixth, and Fourteenth Amendment

rights were violated due to the many instances of prosecutorial misconduct that occurred during trial.

Petitioner lists the following acts and argues that these instances of prosecutorial misconduct

rendered his trial unfair: (1) the district attorney's choking of petitioner, (2) the district attorney's

prejudicial cross-examination of petitioner; (3) the district attorney's "forcing petitioner to state

Bates was lying;" (4) the district attorney's improper cross-examination of defense witness Dixon;

1    and (5) the district attorney's numerous instances of misconduct in closing argument.

2            This court discussed the choking incident in ground six, and the court found that the

3    Nevada Supreme Court's determination was not objectively unreasonable.  While the prosecutor's

4    actions were clearly improper, there is no indication that the district attorney's action had a

5    substantial and injurious effect on the jury or influenced the verdict.  *Brecht v. Anderson*, 507 U.S.

6    619 (1993).  The Nevada Supreme Court also affirmed the lower court's denial of the other

7    subclaims contained in the instant ground for relief.  The court stated:

8            Honeycutt argues that some of the prosecutor's cross-examination
     of his was irrelevant, unduly salacious, and disrespectful.  Aside from the
9    fact no objection was made to most of the prosecutor's questions,
     considering the nature of the charges and the divergent accounts of the
10   circumstances by the victim and Honeycutt, the detailed cross-examination
     does not demonstrate misconduct.  Honeycutt alleges that much of the
11   cross-examination was sarcastic, thereby denigrating him, but that does not
     appear from the record.  Although the cross-examination of Honeycutt was
12   extensive and detailed, the State is entitled to test the credibility of the
     defendant.  Honeycutt correctly cites *United States v. Rodriguez-Estrada*
13   [fn 34: 877 F.2d 153, 159 (1st Cir. 1989).] for the proposition that it is the
     prosecutor's obligation to desist from the use of pejorative language and
14   inflammatory rhetoric.  However, Honeycutt fails to point out any such
     pejorative language or inflammatory rhetoric during the cross-examination.
15
             Honeycutt argues that numerous instances of prosecutorial
16   misconduct in closing argument deprived him of a fair trial.  He argues that
     the prosecutor vouched for the State's witnesses, while calling Honeycutt
17   a liar, among other derogatory terms.  This court has stated that it is
     improper argument for counsel to characterize a witness as a liar. [fn 35:
18   *Ross v. State*, 106 Nev. 924, 927, 803 P.2d 1104, 1105 (1990).] However,
     a prosecutor may demonstrate to a jury through inferences from the record
19   that a defense witness's testimony is untrue. [fn 36: *Id.*] A review of the
     prosecutor's closing arguments shows that all references to the defendant
20   and witnesses were not name-calling or improper vouching for the
     credibility of witnesses, but rather the drawing of inferences from evidence
21   at trial.

22   Exhibit 52.

23           The Nevada Supreme Court's rejection of petitioner's claim is not objectively

24   unreasonable.  A court "review[s] claims of prosecutorial misconduct 'to determine whether the

25   prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial

26   of due process.'" *Drayden v. White*, 232 F.3d 704, 713 (9th Cir. 2000) (quoting *Hall v. Whitley*, 935

1    F.2d 164, 165 (9th Cir. 1991)).  However, attorneys are given wide latitude during closing

2    arguments.  *Fields v. Brown*, 431 F.3d 1186, 1206 (9th Cir. 2005).  Furthermore, questionable

3    remarks can be cured by jury instructions.  *Johnson v. Sublett*, 63 F.3d 926, 930 (9th Cir. 1995).

4           The Nevada Supreme Court affirmed the denial of this claim, stating that after reviewing the

5    testimony, and the prosecutor's cross-examination of defense witness Dixon and the petitioner, that

6    the prosecutor did not improperly cross-examine the witnesses or make prejudicial comments.  The

7    court agrees.  After reviewing the testimony, it does not appear the prosecutor acted improperly in

8    conducting his cross-examination.  Moreover, the Nevada Supreme Court's factual findings are

9    entitled to a presumption of correctness.  28 U.S.C. § 2254(e)(1).  When read in context, the

10   statements petitioner complains about do not appear to have infected the whole trial with

11   fundamental unfairness.

12          Furthermore, the Nevada Supreme Court's rejection that the prosecutor's closing

13   arguments were improper is not objectively unreasonable.  The state did not appear to make any

14   improper arguments during closing arguments.  Petitioner contests the prosecutor's statements

15   calling him a "liar."  Generally, a prosecutor cannot express an opinion about the defendant's guilt or

16   the credibility of witnesses.  *United States v. McKoy*, 771 F.2d 1207, 1211 (9th Cir. 1985).  A

17   prosecutor may not refer to a criminal defendant as a liar unless the assertion is based on reasonable

18   inferences of the evidence presented at trial.  *United States v. Garcia-Guizar*, 160 F.3d 511, 520 (9th

19   Cir. 1998); *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991).  However, a prosecutor

20   has reasonable latitude to fashion closing arguments.  *United States v. Gray*, 876 F.2d 1411, 1417

21   (9th Cir. 1989), *cert. denied*, 495 U.S. 930 (1990).  In cases where there are two conflicting stories, it

22   may be reasonable to infer and argue that one of the two sides is lying.  *United States v. Laurins*, 857

23   F.2d 529, 539-40 (9th Cir. 1988), *cert. denied*, 492 U.S. 906 (1989).

24          In the instant case, the prosecutor's remarks that the petitioner was lying were

25   permissible, as they were reasonable inferences.  There were two conflicting stories in petitioner's

26   case, and one could infer that either the petitioner or the victim was lying. The Nevada Supreme

41

1 Court's ruling was not contrary to, or an unreasonable application of, clearly established federal law,

2 as determined by the Supreme Court of the United States, and that ruling was not based on an

3 unreasonable determination of facts in light of the evidence.  28 U.S.C. § 2254(d).

4 The court will deny ground eleven.

5 **H.  Ground Twelve**

6 In ground twelve petitioner alleges that his Fifth, Sixth, and Fourteenth Amendment

7 rights were violated due to outrageous government conduct when detective Hanna lied under oath at

8 the grand jury hearing, when Paule and Preusch were allowed to question him without counsel being

9 present, when he was entrapped by the state into the commission of a crime, and when the trial court

10 failed to require the state to produce Paule's presentence investigation report.

11 The court discussed the issue of whether perjured testimony was given at the grand

12 jury hearing, in conjunction with ground one(h), and found that petitioner had not shown that the

13 detective lied at the grand jury hearing.  Moreover, the court determined that petitioner's statements

14 were properly admitted at trial, as his right to counsel regarding the solicitation had not attached and

15 he had voluntarily given statements to the informant and police in relation to ground four.

16 Finally, the Nevada Supreme Court's determination that petitioner's claim that the

17 trial court erred in not requiring the state to produce the informant's presentence investigation report

18 was not objectively unreasonable.  Defense counsel argued prior to the start of trial that petitioner

19 was entitled to Paule's California presentence investigation report (PSI).  Exhibit 37, T 3.  The state

20 told the court that they did not have Paule's California PSI.  *Id.* at T 4.  The court determined that it

21 would not require the district attorney to request Paule's PSI from the State of California and then

22 produce it to the defendant.  *Id.* at T 6.

23 In *Brady v. Maryland*, 373 U.S. 83, 87 (1963) the United States Supreme Court found

24 that a state's suppression of evidence, whether intentional or inadvertent, will violate due process

25 when that evidence is favorable or material to the defense.  Moreover, the suppression of evidence

26 must have prejudiced the proceeding.  *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999).  The state

did not suppress any evidence in this case.  The district attorney told the court that it did not have

Paule's California PSI.

The court will deny ground twelve.

**I. Ground Thirteen**

In his thirteenth ground for relief petitioner alleges that his Fifth, Sixth, and

Fourteenth Amendment rights were violated due to judicial bias and improper rulings.  Specifically

petitioner contends that (1) the trial court forced him to testify to the solicitation charge, (2) the trial

court abused its discretion in holding that the petitioner must answer questions outside the scope of

direct examination relating to the solicitation to commit murder charge, (3) the trial court showed

bias in applying different rules for the state and defense witnesses, (4) the trial court abused its

discretion in admitting the redacted Luxor security videotape, (5) the trial court abused its discretion

in admitting witness Bard's testimony, (6) the trial court erred in allowing a jury instruction on

voluntary intoxication while precluding petitioner's proposed instruction on reasonable mistake of

consent.  The Nevada Supreme Court rejected these claims on direct appeal, finding them to be

without merit.  Exhibit 52.

This court has previously addressed the issues raised in subclaims (1), (2), (4), and

(5), and has found that the Nevada Supreme Court's denial of these claims was not objectively

unreasonable.  Petitioner also has not shown that the Nevada Supreme Court's rejection of subclaim

(3) was objectively unreasonable.  Subclaim (3) specifically alleges that the trial court showed bias

when it allowed witness Ebbert to testify about her opinion regarding injuries to the victim's neck

but would not allow the defense expert to testify his opinion about injuries to the victim's neck or

vaginal area.

At trial Linda Ebbert, the sexual assault nurse that examined victim Bates, testified

that she did an entire body check of the victim, and did not see any bruising on Bates.  Exhibit 40, T

74-75.  Ebbert noted that Bates complained of soreness in her upper chest and throat area.  *Id.* at T

75.  The state then asked Ebbert, if, her training and experience, if you have someone who was

43

1   choked or had pressure applied to their throat, if she would expect there to be bruises.  *Id.*  Defense

2   counsel objected, stating that the question was outside her area of expertise.  *Id.*  The court overruled

3   the objection, stating she had been qualified as an expert in performing sexual assault examinations.

4   *Id.*

5        The defense called Mohamed Eftaiha as an expert witness.  Exhibit 41, T 8.  Dr.

6   Eftaiha practices colon, rectal, and general surgery.  *Id.* at T 10.  Defense counsel asked the doctor

7   "[i]f somebody were choked by a force sufficient to cause the eyes to bug out and so the person is

8   suffering from shortness of breath, would you expect to see bruising around the neck?" *Id.* at T 18.

9   The doctor answered that such choking would cause a lot of pressure on the skin and that would

10  show at least a bruise or marks in the area.  *Id.*  On cross-examination the state asked the doctor if he

11  had ever been qualified as an expert on bruising or choking, and the doctor stated he never had.  *Id.*

12  at T 18-19.  The court found that the doctor qualified as an expert in rectal and colon surgery and the

13  treatment of the rectum and colon.  *Id.* at T 20.

14       Petitioner has not shown that the Nevada Supreme Court's rejection of this claim was

15  objectively unreasonable.  Petitioner has not shown that the trial court was biased in the way it dealt

16  with the witnesses.  Ebbert was found to be an expert in the area of performing sexual assault exams,

17  which includes examination of the genital areas, as well as the rest of the body.  Defense witness

18  Eftaiha practices colon and rectal surgery, and had not shown that he was an expert in bruising of the

19  neck and check area.

20       Regarding petitioner's sixth subclaim, petitioner has not shown that the Nevada

21  Supreme Court's rejection of this claim was objectively unreasonable.  The state district court, in

22  jury instruction number 10, instructed the jury on the fact that sexual assault was a general intent

23  crime.  Exhibit 43, T 2.  The instruction further stated that any claim or evidence of drinking alcohol

24  or voluntary intoxication by the defense is no excuse or defense to the crime.  *Id.*  Petitioner has not

25  shown that this is an incorrect statement of law or an incorrect jury instruction.

26       The court will deny ground thirteen.

1        **J.  Ground Fourteen**

2               In his fourteenth and final claim petitioner argues that cumulative error deprived him

3    of his right to a fair trial in violation of the Fifth, Sixth, and Fourteenth Amendments.

4               The cumulative error doctrine recognizes that the cumulative effect of several errors

5    may prejudice a defendant to the extent that his conviction must be overturned.  *See United States v.*

6    *Frederick*, 78 F.3d 1370, 1381 (9th Cir.1996).  The cumulative error doctrine, however, does *not*

7    permit the Court to consider the cumulative effect of *non-errors*.  *See Fuller v. Roe*, 182 F.3d 699,

8    704 (9th Cir. 1999), *overruled on other grounds*, *Slack v. McDaniel*, 529 U.S. 473 (2000) ("where

9    there is no single constitutional error existing, nothing can accumulate to the level of a constitutional

10   violation").

11              The Nevada Supreme Court stated that because petitioner failed to demonstrate that

12   his trial or appellate counsel were ineffective, that he failed to demonstrate cumulative error in the

13   case.  Exhibit 72.  This court has found petitioner's claims to be without merit, therefore the court

14   also finds that petitioner has not shown cumulative error.  This claim fails.

15   **V.  Evidentiary Hearing**

16              Petitioner also has this court to hold an evidentiary hearing on the claims contained in

17   the petition for writ of habeas corpus.  A federal district court cannot hold an evidentiary hearing

18   when a petitioner "has failed to develop the factual basis of a claim in State court proceedings"

19   unless a petitioner can show (1) the claim relies on a new rule of constitutional law or a factual

20   predicate that could not have been previously discovered through the exercise of due diligence and

21   (2) the facts underlying the claim are sufficient to establish by clear and convincing evidence that no

22   reasonable fact finder would have found the petitioner guilty of the underlying offense.  28 U.S.C. §

23   2254(e)(2).  A petitioner has "failed to develop" the facts in state court if there is a "lack of

24   diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel."  *Williams v.*

25   *Taylor*, 529 U.S. 420, 432 (2000).

26              Petitioner has not met the standard for holding an evidentiary hearing in federal court.

1   Petitioner has not shown that his claims rely upon new facts that could not have been previously

2   discovered in the state court, or that no reasonable fact finder would have found the petitioner guilty

3   of the underlying offenses.  The Court will deny petitioner's request for an evidentiary hearing.

4   **VI.  Certificate of Appealability**

5          In order to proceed with an appeal from this court, petitioner must receive a certificate

6   of appealability.  28 U.S.C. § 2253(c)(1).  Generally, a petitioner must make "a substantial showing

7   of the denial of a constitutional right" to warrant a certificate of appealability.  *Id.*  The Supreme

8   Court has held that a petitioner "must demonstrate that reasonable jurists would find the district

9   court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S.

10  473, 484 (2000).

11         The Supreme Court further illuminated the standard for issuance of a certificate of

12  appealability in *Miller-El v. Cockrell*, 537 U.S. 322 (2003).  The Court stated in that case:

13         We do not require petitioner to prove, before the issuance of a COA, that
           some jurists would grant the petition for habeas corpus.  Indeed, a claim

14         can be debatable even though every jurist of reason might agree, after the
           COA has been granted and the case has received full consideration, that

15         petitioner will not prevail. As we stated in *Slack*, "[w]here a district court
           has rejected the constitutional claims on the merits, the showing required

16         to satisfy § 2253(c) is straightforward: The petitioner must demonstrate
           that reasonable jurists would find the district court's assessment of the

17         constitutional claims debatable or wrong."

18  *Id.* at 1040 (quoting *Slack*, 529 U.S. at 484).

19         The court has considered the issues raised by petitioner, with respect to whether they

20  satisfy the standard for issuance of a certificate of appeal, and the court determines that none meet

21  that standard.  Accordingly, the court will deny petitioner a certificate of appealability.

22         **IT IS THEREFORE ORDERED** that petitioner's motion to dismiss the first

23  amendment petition (docket #42) is **GRANTED**.

24         **IT IS FURTHER ORDERED**  that the petition for a writ of habeas corpus (docket

25  #10) is **DENIED**.

26         **IT IS FURTHER ORDERED** that the clerk shall **ENTER JUDGMENT**

1    **ACCORDINGLY**.

2              **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**

3    **APPEALABILITY**.

4

5              DATED this _____20TH_____ day of July, 2009.

6

7

8                                        CHIEF UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26